UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SOUTHERN MARSH COLLECTION, LLC.

CIVIL ACTION

VERSUS

NO. 14-495-JJB-SCR

C.J. PRINTING, INC. (d/b/a SOUTHERN FRIED COTTON)

**RULING ON MOTION TO DISMISS**

Defendant, C.J. Printing, Inc., moves for this Court to dismiss all claims of Plaintiff, Southern Marsh Collection, L.L.C., because the Court lacks jurisdiction over the Defendant (doc. 5). Plaintiff asserts the following claims against Defendant: Trademark Infringement under the Lanham Act, False Designation of Origin and Dilution under the Lanham Act, Unfair and Deceptive Trade Practices under Louisiana Law, Trademark Infringement and Unfair Competition under Louisiana Law, and Trademark Infringement under South Carolina Law (doc. 1). Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and all responsive briefs were considered for this Ruling.

**STANDARD OF REVIEW**

When a nonresident-defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Dykes v. Maverick Motion Picture Grp., LLC*, No. 08-536-JJB-CN, 2011 WL 900276, at *2 (M.D. La. Mar. 14, 2011)(citing *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When considering a motion to dismiss for lack of personal jurisdiction, the Fifth Circuit directs courts to accept plaintiff's allegations as true, other than those which are controverted by the defendant or are simply conclusory statements, and to resolve conflicts between the parties' facts in plaintiff's favor. *Id.* (citing *Panda Brandywine v. Potomac*, 253 F.3d 865, 868 (5th Cir. 2001)).

A court may exercise personal jurisdiction over a nonresident-defendant only if the forum state's long-arm statute confers personal jurisdiction and the exercise of personal jurisdiction does not exceed the boundaries of due process. *Dykes*, at *4. The long-arm statute of Louisiana, the forum state here, authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment. *Id*. A court's exercise of personal jurisdiction over a nonresident-defendant comports with the due process clause when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that state and (2) the court's exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The first inquiry, into "minimum contacts," is fact-intensive and no one element is decisive; rather, the touchstone is whether the defendant purposely directed his activities towards the forum state, such that he could reasonably foresee being haled into court there. *Luv N' Care Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006), quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A party may establish minimum contacts sufficient for the state to assert specific jurisdiction or general jurisdiction. *Alpine View Co. v. Atlas Copco, A.B.*, 205 F.3d 208, 215 (5th Cir. 2000).

Specific jurisdiction exists if a nonresident-defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). That is, for a court to exercise specific jurisdiction (1) the defendant must have directed activities or purposely availed itself of the privileges of conducting activities in the forum state; (2) the cause of action must arise out of the defendants forum-related contacts; and (3) the court's exercise of

jurisdiction must be fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). Merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction. *Burger King*, 471 U.S. at 472.

After determining whether a defendant has sufficient minimum contacts, the court must next determine whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. In doing so, the court considers (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interest of other states in securing the most efficient resolution to the controversy; and (5) the shared interest of the several states in furthering fundamental social policies. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

In 1999, the Fifth Circuit adopted the *Zippo* sliding scale for internet-based personal jurisdiction analysis. *Mink v. AAAA Development L.L.C.*, 190 F.3d 333, 336 (5th Cir. 1999)(citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)). In 1997, when the *Zippo* ruling was issued, the sliding scale was explained as follows:

> This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g. CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g. Bensusan Restaurant Corp., v. King,* 937 F.Supp. 295 (S.D.N.Y.1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996).

*Zippo*, 952 F.Supp. at 1124. The Fifth Circuit more recently acknowledged the value of the *Zippo* sliding scale "because it can provide evidence of purposeful conduct." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 n.7 (5th Cir. 2012)(internal citations omitted). However, the Court cautioned that "internet-based jurisdictional claims must continue to be evaluated on a case-by-case basis, focusing on the nature and quality of online and offline contacts to demonstrate the requisite purposeful conduct that establishes personal jurisdiction." *Id*. Further, regarding contacts through the internet, the Fifth Circuit acknowledged the following:

> [D]ue process analysis has been refined…into a three-part test that seems fully applicable to jurisdiction questions generated by the new technologies: (1) Did the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts? (2) Did the defendant purposely direct its activities toward the forum state or purposely avail itself of the privilege of conducting activities therein? (3) Would the exercise of personal jurisdiction over the defendant be reasonable and fair?

*Id.* at 227 (quoting 4a Charles Alan Wright et al., Fed. Prac. & Proc. § 1073.1, at 334 (3d ed. 2002)(citing *Mink*, 190 F.3d at 336)). The Court continued, if a "defendant's internet activities can satisfy each prong of this test, the exercise of specific jurisdiction by a federal court generally should be upheld." *Id*.

## **DISCUSSION**

Southern Marsh does not attempt to argue that C.J. Printing is subject to the Court's general jurisdiction. The following discussion focuses on specific jurisdiction only (doc 15, at 2). Because Southern Marsh, as the Plaintiff, bears the burden of proving that the Court has jurisdiction over C.J. Printing, the nonresident-Defendant, we will first consider if that burden has been satisfied. The contacts Southern Marsh points to surround internet and website use.

Southern Marsh points to a ruling from the Northern District of Texas to support its conclusion that C.J. Printing has purposely availed itself to the jurisdiction of this Court through

4

its minimum contacts with the forum state (doc. 12, at 5-6 (citing *Tempus-Pedic Intern., Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366 (N.D. Tex. 2010))). The court, employing the sliding scale of *Zippo*, found that three sales over an interactive website, in alleged violation of the plaintiff's trademark rights, sufficed as minimum contacts to support a finding of personal jurisdiction. *Id.* at 370-73. The website at issue in *Tempur-Pedic* had "a 'live chat" pop-up window, and the 'cloud9mattress.us' website advertised a toll-free number, email, no sales tax in all 50 states, and an offer to deliver anywhere in the 48 contiguous states at no extra charge." *Id*. at 370. The *Tempur-Pedic* court distinguished its facts from those in *Mink* where "the website only provided a printable mail-in order form, a toll-free telephone number, and an email address, but had no capacity for buyers to place online orders." *Id*. at 373 (citing *Mink*, 190 F.3d at 337 (5th Cir. 1999)). Ultimately, the *Tempur-Pedic* court found the defendant was subject to the court's jurisdiction. *Tempur-Pedic*, despite its conclusion, distinguished the facts before it from the case where a "third-party customer, on his own initiative, contacts the defendant to inquire about its willingness to transact business." 758 F. Supp. 2d at 373-74.

As noted above, a fairly recent decision by the Fifth Circuit reminds the courts in this circuit that the *Zippo* sliding scale is an important factor in internet-based personal jurisdiction analysis, but these cases are to be decided on a case-by-case basis that focuses on the nature and quality of online and offline contacts and whether such contacts demonstrate the requisite purposeful conduct that establishes personal jurisdiction. *Pervasive Software*, 688 F.3d at 227 n.7 (5th Cir. 2012). In *Pervasive*, the defendant "[did] not have an office, own property, or have agents or employees in Texas, and it [did] not promote, market, or sell its products inside Texas. Its products are specifically designed for the German taxpayer market and are only available in the German language." *Id.* at 218. The website used by the defendant was interactive, used only

the German language, allowed customers to purchase and download free trials of Lexware's software products. *Id.* "The website is accessible worldwide, including in Texas. Lexware has sent fifteen internet orders to twelve Texas billing or shipping addresses since 2007." *Id.* Applying these facts to the three-part test the Fifth Circuit adopted in *Pervasive*, the Court found that the plaintiff failed to satisfy the first two parts of the test. *Id*. at 227. The plaintiff failed part one because the alleged breach did not arise out of the relatively sparse contacts involving fifteen internet website sales of the product to purchasers at Texas billing addresses. *Id*. The plaintiff failed to satisfy the second part of the test because the defendant's "actions of making its German tax and financial software internet-accessible were not purposely directed toward Texas or purposely availing of the privilege of conducting activities in Texas." *Id*. The Court reiterates that the goal of the purposeful available requirement is "to provide predictability and given notice to the defendant that it is subject to suit in the forum state, so that the company 'can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State.'" *Id.* at 228 (quoting *Hy Cite Corp. v. Badbusinessbureau.com, LLC*, 297 F.Supp.2d 1154, 1163 (W.D. Wis. 2004)(quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980))).

Southern Marsh argues that C.J. Printing has established minimum contacts with the forum state (doc. 12, at 1). In an effort to support this argument, Southern Marsh points to at least three occasions where C.J. Printing shipped the damage-causing products to a Louisiana address. Southern Marsh concludes that these facts are alone sufficient to establish personal jurisdiction in an action for trademark infringement. C.J. Printing urges that shipments of the alleged infringing products on three occasions into Louisiana were "solely at the initiative of the third-party purchaser" (doc. 15, at 5). C.J. Printing does not direct any advertisements or

solicitations towards the state of Louisiana or its residents. Despite having dealer networks throughout the Southeast, C.J. Printing does not have "cotton brokers," defined as brand ambassadors for spreading the word about Southern Fried Cotton at their respective universities or colleges, anywhere in Louisiana including universities within the state (doc. 5-1, at 3). C.J. Printing's design that is in dispute is not searchable over the internet (doc. 15, at 7). Therefore, C.J. Printing concludes, the sales were likely the result of customers venturing outside the state of Louisiana (doc. 15, at 5). C.J. Printing again explains that the shipments to Louisiana addresses were completed through PayPal and not through C.J. Printing's website. In fact, no purchaser information was entered on C.J. Printing's website (doc. 15, at 5-6). According to C.J. Printing, the only transaction activity conducted on the website involved the customer selecting the product and checking a box for having read C.J. Printing's terms and refund policy. All other purchaser-identifying information was given to the PayPal website.

Southern Marsh cites to several cases to support a finding of specific jurisdiction. However, at least three of those cases were patent law cases where the question of specific jurisdiction was determined by the Federal Circuit's law, not the Fifth Circuit. Unlike many of the cases relied on by Plaintiff, where specific jurisdiction was ultimately an issue decided by the Federal Circuit, C.J. Printing does not advertise any sales tax or shipping incentive related to Louisiana and does not have a "live chat" feature on its website (doc. 15, at 6). Further, as these cases are all patent law and the claims of Southern Marsh are all trademark infringement there is even less room for comparison.

C.J. Printing directs no advertising or soliciting into the forum. In different parts of the Southeast, the Defendant uses its "cotton brokers" to promote its product in various states and universities. Yet, C.J. Printing had no cotton brokers in Louisiana or at any Louisiana

7

universities or colleges. The design in dispute is not searchable on the internet. On the three occasions where allegedly infringing products were shipped to Louisiana, the purchases were completed through a third-party website, namely, PayPal. The C.J. Printing website did not take the purchaser's shipment address. C.J. Printing would then ship the products as directed by the purchaser. In fact, the only fact Southern Marsh relies on to suggest Defendant has minimum contacts with the forum is that Defendant shipped three disputed products into the State of Louisiana.

## **CONCLUSION**

The Plaintiff has failed in its burden of establishing the minimum contacts necessary to establish personal jurisdiction over the Defendant. The Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.


Signed in Baton Rouge, Louisiana, on January 26, 2015.

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**